

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| THE UNIVERSITY OF CINCINNATI<br>2600 Clifton Avenue<br>Cincinnati, OH 45221,<br><br>    Plaintiff,<br><br>v.<br><br>HAMBURG TEA COMPANY<br> *d.b.a.* BEARCAT CAFE<br>c/o Anthony Hamburg, Statutory Agent,<br>2864 Roseann Lane<br>Cincinnati, OH 45239,<br><br>    Defendant. | Case No. 1:11-cv-0176<br><br>JUDGE: Michael R. Barrett<br><br>Magistrate Judge: _____ |

## COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

Now comes Plaintiff, The University of Cincinnati ("U.C."), by and through counsel, and for its Complaint against Defendant, Hamburg Tea Company, states as follows:

### NATURE OF THE CASE

1. This is an action for trademark infringement, unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1114 and § 1125(a) relating to Defendant's unlawful appropriation of U.C.'s registered and common law trademarks in connection with Defendant's business.

2. U.C. is a public institution of higher learning located in Cincinnati, Ohio, operated under Chapter 3361 of the Ohio Revised Code, and is engaged in providing university level educational courses, college athletic competitions and recreational programs, and numerous related

activities, including food and beverage services for students, faculty, staff and visitors.

3. U.C.'s official mascot is the Bearcat. The Bearcat is commonly associated with U.C. in the Cincinnati, Ohio, area, throughout the State of Ohio, and throughout the United States.

4. Upon information and belief, Defendant is an Ohio corporation operating a bar and coffee house at 239 West McMillan Street in Cincinnati, Ohio, very near the campus of U.C.

5. Upon information and belief, the Defendant's bar and coffee house on West McMillan Street is known as "Baba Budan's Bearcat Cafe."

6. Upon further information and belief, Defendant registered the trade name "Bearcat Cafe" with the Ohio Secretary of State on or about March 1, 2004.

7. This Court has jurisdiction over this matter under 15 U.S.C. § 1121 and 28 U.S.C. § 1338. Venue is proper in this Court under 28 U.S.C. § 1391(b), as U.C.'s cause of action arose and U.C. is being injured in this judicial district, and because Defendant is located in this judicial district.

## THE U.C. "BEARCAT" TRADEMARKS

8. U.C. traces its origins to 1819, when the Cincinnati College and the Medical College of Ohio were chartered. The University of Cincinnati was established in 1870, absorbing the two earlier institutions. In 1977, U.C. became a state university.

9. For more than 140 years U.C. has been actively engaged in providing university level educational courses, college athletic competitions and recreation programs, dramatic and musical entertainment events, and numerous related activities, including food and beverage services for students, faculty, staff and visitors. U.C. also licenses and markets various products and services, including clothing and other merchandise, using U.C.'s trademarks.

10. U.C.'s official mascot is the Bearcat. The Bearcat name first became popular on the U.C. campus in 1914. In 1919, a local sports reporter published the first major media article referring to one of U.C.'s athletic teams are the Bearcats. Since that time, the Bearcats nickname has consistently been associated with U.C. athletics and the University at large.

11. In connection with the activities and products described in the preceding paragraphs, U.C. is the owner of, among others, the following federally registered trademarks and/or service marks:

   a. "BEARCATS" - registration number 1,692,019, registered June 9, 1992, for use in connection with educational services, namely providing courses of instruction, seminars, lectures and conferences at the university undergraduate and graduate levels, and entertainment services, namely arranging and conducting athletic competitions and musical concerts.

   b. "CINCINNATI BEARCATS" - registration number 1,505,966, registered September 27, 1988, for use in connection with educational services, namely providing courses of instruction at the college level, and entertainment services, namely promoting and organizing sporting events, and for use on glassware, namely drinking glasses, pitchers, mugs, steins, cups and decorative plates; and clothing, namely shirts, sweaters, shorts, hats, caps, visors, shoes, sweatshirts and sweatpants.

   c. "CINCINNATI BEARCATS" - registration number 1,682,093, registered April 7, 1992, for use on clothing, namely sweatshirts, sweatpants, T-shirts, cheerleader tops, tank tops, sportshirts and baseball shirts; and headgear, namely baseball caps.

   d. "CINCINNATI BEARCATS" - registration number 1,707,311, registered August 11, 1992, for use in connection with entertainment in the nature of football, basketball, soccer, lacrosse, hockey, volleyball, wrestling, rugby, baseball, softball and tennis games, and track, swimming and diving events; and sport camps.

   e. "CINCINNATI BEARCATS" - registration number 1,717,998, registered September 22, 1992, for use on paper goods, namely sporting event programs and brochures featuring sport topics.

      f.    "CINCINNATI BEARCATS" - registration number 1,901,805 registered June 27, 1995, for use on clothing, namely hats and shirts.

12.    Copies of the Certificates of Registration for each of these trademarks are attached to this Complaint as Exhibits A through F, respectively.

13.    The Certificates of Registration identified in the preceding paragraph are valid and subsisting, and U.C. has record title in the marks described above.

14.    These Certificates of Registration are prima facie evidence of the validity of the registered marks, U.C.'s ownership of the registered marks, and U.C.'s exclusive right to use the registered marks in connection with the goods and services specified in the Certificates of Registration identified above. All of the registered marks are incontestable, which provides conclusive evidence of their validity under 15 U.S.C. § 1115(b), and constructive notice of the registrant's claim of ownership under 15 U.S.C. § 1072.

15.    In addition, U.C. owns common law trademarks in the distinctive use of its school mascot, the Bearcat, and the Bearcat name, among others.

16.    The Bearcat name and mascot are featured prominently in connection with university sporting events, including but not limited to intercollegiate football and basketball. Intercollegiate football and basketball games in which the Cincinnati Bearcats teams compete are played in front tens of thousands of fans, and broadcast regionally and/or nationally to audiences numbering in the millions.

17.    In connection with the promotion of its various educational, athletic, entertainment and other activities, and in association with its registered and common law marks, many of which include the term "Bearcats", U.C. has historically used the term "Bearcats" or "Bearcat" to refer to and describe various individuals, teams, facilities and organizations affiliated with U.C.

18. In connection with its various activities described above, U.C. offers food and beverage services to students, faculty, staff and visitors through U.C.'s University Dining Services. University Dining Services offers its food and beverage services at multiple locations incorporating the "Bearcat" name and/or at locations referred to as cafés. These include, but are not limited to, Stadium View Café, CampusView Café, College of Business Café, DAAP Café, Bearcat Lounge, College of Applied Science Café, and Raymond Walters Café. In addition, University Dining Services operates a campus pub featuring a full beer and food menu, known as "Catskeller". In addition to its beer and food menu, Catskeller presents live musical performances. University Dining Services also offers catering services for on-campus events. Food and beverages are also sold at U.C. entertainment events, including athletic competitions, recreational programs, musical concerts and the like.

19. U.C. has used the registered marks and common law marks described above (collectively the "U.C. trademarks") continuously and exclusively for identification with U.C. and its educational, athletic and entertainment activities. The U.C. trademarks and their reputation and goodwill have continuously grown and are now well-known throughout the City of Cincinnati, the State of Ohio, and the United States.

20. The U.C. trademarks have become and are now solely associated with U.C. in the minds of consumers, particularly consumers in and around the area of the U.C. campus, the greater Cincinnati area, and the State of Ohio.

21. U.C.'s athletic teams and students have been known as "Bearcats" since at least as early as 1914. Due to the long, extensive and continuous use of the term "Bearcats" in association with U.C. teams, programs and events, consumers now associate the terms "Bearcats" and "Bearcat"

with U.C.

22. U.C. licenses and markets many items using the trademarks "Bearcat," "Bearcats" and various derivations thereof.

23. U.C. is ranked as one of America's top 25 public research universities by the National Science Foundation. U.S. News has ranked U.C. in the top tier of America's best colleges and has listed U.C. as one of fifteen "up and coming" universities. The Chronicle of Higher Education has categorized U.C. as a "research heavyweight." Forbes Magazine has named U.C. as one of the world's most beautiful campuses.

24. Each year, roughly 5,000 students graduate from U.C., adding to more than 200,000 living alumni around the world. When consumers in and around Cincinnati, the State of Ohio, and throughout the nation hear the word "Bearcats" or see it used in association with certain products and services, they immediately associate it with U.C.

25. U.C.'s men's basketball program is consistently among the top tier of collegiate basketball teams in the country. The program boasts six appearances in the Final Four of the NCAA Tournament and back-to-back National Championships. U.C. men's basketball is one of the winningest teams in NCAA Tournament history. NCAA Tournament games are broadcast nationally every year to audiences numbering in the millions.

26. U.C.'s football program is one of the oldest in the country, in existence since 1885. Since 2005, U.C.'s football team has played in the Big East Conference, one of the major football conferences in the NCAA. In 2008, the U.C. football team won eleven games during the regular season, earning its first Big East Championship and a berth in the Orange Bowl, a nationally televised game which is included in the Bowl Championship Series. In 2009, the U.C. football team

completed an undefeated regular season and earned a berth in the Sugar Bowl, another bowl game included in the Bowl Championship Series. The Orange Bowl and Sugar Bowl appearances by the U.C. football team were broadcast nationally to millions of viewers.

27. The success of U.C.'s athletic programs, along with its national reputation as an academic institution, further underscore the strength of the U.C. trademarks on a national and regional basis, making goods and services bearing the U.C. trademarks more desirable.

28. As a result of U.C.'s notoriety and its extensive use, advertising and sale of goods and performance of services bearing the U.C. trademarks, the U.C. trademarks have acquired strong secondary meaning, have achieved favorable national recognition, and have become assets of significant value as symbols pointing to U.C., its services, its products and its goodwill.

29. U.C. approves and maintains quality control over all of the products and services it licenses and produces, the goods and services bearing its trademarks, and its trade dress. U.C. undertakes these efforts to protect the tradition, prestige and goodwill associated with its trademarks and makes systematic efforts to safeguard the quality and integrity of its trademarks. Accordingly, the public assumes that U.C. has approved, sponsored or endorsed all products and services bearing the U.C. trademarks.

30. The past success of U.C.'s academic and athletic programs has resulted in extensive exposure of the U.C. trademarks to a national audience, and has created an increased demand for products and services bearing the U.C. trademarks throughout the Cincinnati, Ohio, region, the State of Ohio and the United States.

31. U.C.'s use of the words "Bearcat" and "Bearcats" in connection with the U.C. trademarks and various activities has been continuous, and the public now associates the words

"Bearcat" and "Bearcats" when used in conjunction with athletic events, educational events, numerous products and many services to be affiliated with U.C., particularly, events, products and services offered or sold on or near the U.C. campus and in the Cincinnati region.

32. The use of the words "Bearcat" and "Bearcats" has become associated in the mind of the public with U.C. and particularly with its athletic teams, campus-area events and services, students and educational services.

33. Defendant is not and has not been licensed by U.C. for use of the U.C. trademarks in connection with any products or services, other than a limited, non-exclusive right to use the words "Bearcat Campus Card" under an agreement, which has been or will soon be terminated, whereby Defendant was authorized to accept U.C.'s "Bearcat Campus Card" as a form of payment from faculty, staff and students maintaining a Bearcat Campus Card account.

## DEFENDANT'S INFRINGING USE OF THE U.C. TRADEMARKS

34. Upon information and belief, Defendant operates a bar and coffee house very close to the U.C. campus, at 239 West McMillan Street in Cincinnati, Ohio. This establishment is known as "Baba Budan's Bearcat Café."

35. Upon information and belief, Defendant operates coffee houses, espresso bars and coffee kiosks in other locations around the City of Cincinnati, including hospitals and theaters. Defendant also offers catering services.

36. Upon information and belief, the West McMillan Street location of Defendant's business is the only location or operation which Defendant refers to as "Bearcat Café". Upon information and belief, Defendant refers to its other locations simply as "Baba Budan's" or a similar derivation thereof.

37. Upon information and belief, Defendant's coffee houses, espresso bars, coffee kiosks and catering services offered in other locations around the City of Cincinnati do not incorporate or otherwise use, in any way, the "Bearcat" or "Bearcats" name.

38. On or about March 1, 2004, Defendant registered the trade name "Bearcat Cafe" with the Ohio Secretary of State. Upon information and belief, this occurred a few months before Defendant's previously registered trade name, "Baba Budan Espresso Bar & Coffee House", was permitted to expire.

39. Upon information and belief, Defendant's website and other online marketing channels, including but not limited to social media accounts, do not refer to Defendant's West McMillan Street location as "Bearcat Café."

40. Upon information and belief, signage above and inside Defendant's West McMillan Street location incorporates the "Bearcat Café" name, and the U.C. trademarks are otherwise used or displayed at that location.

41. Upon information and belief, Defendant is using and will continue to use the "Bearcat Café" name in connection with its West McMillan Street establishment, which is open to the consuming public, unless this Court issues an injunction prohibiting Defendant's use.

42. Upon information and belief, Defendant generates business revenue by selling goods and/or providing other services to the consuming public at its West McMillan Street location.

43. Defendant's use of "Bearcat Café" at its West McMillan Street location constitutes an unauthorized use of the U.C. trademarks.

44. Defendant's unauthorized use of the U.C. trademarks is commercial in nature and is intended to, and will, directly compete with the lawful commercial activities of U.C. and its licensees

to the detriment of U.C.

45. Prior to the year 2011, U.C. and its authorized agents have sent cease and desist correspondence to the Defendant, demanding that it cease and desist with the use of the "Bearcat" name in conjunction with its West McMillan Street establishment.

46. Defendant did not respond to any of the above-referenced cease and desist correspondence and, upon information and belief, continues to engage in the infringing activities described above.

## COUNT ONE
## INFRINGEMENT OF REGISTERED TRADEMARKS UNDER 15 U.S.C. § 1114

47. U.C. incorporates the allegations contained in paragraphs 1 through 47 as if fully restated herein.

48. Defendant has engaged, and continues to be engaged, in the commercial use of U.C.'s registered U.C. trademarks in connection with Defendant's sale, offering for sale, distribution and/or advertisement of goods and/or services.

49. Defendant's commercial use of U.C.'s registered U.C. trademarks is likely to cause confusion or mistake among consumers, or to deceive consumers, as to Defendant's affiliation, connection, association, sponsorship or endorsement by or with U.C. Such confusion, mistake or deception is likely to affect numerous consumers and potential consumers in and around the U.C. campus area and the greater Cincinnati area.

50. Accordingly, Defendant's use of U.C.'s registered U.C. trademarks constitutes trademark infringement under the Lanham Act, 15 U.S.C. § 1114.

51. Defendant's use of U.C.'s registered U.C. trademarks has been and continues to be willful, intentional and knowing as contemplated by 15 U.S.C. § 1117.

52. The goodwill of the U.C. trademarks is of substantial value, and U.C. is suffering and will continue to suffer irreparable harm should Defendant's unauthorized use of the U.C. trademarks continue.

53. Defendant's use of the U.C. trademarks will continue unless enjoined by this Court.

54. U.C. is entitled to a temporary restraining order, preliminary injunction and permanent injunction against Defendant, as well as other remedies available under the Lanham Act, including but not limited to compensatory damages, treble damages, disgorgement of profits, costs and attorney's fees.

## COUNT TWO
## UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

55. U.C. incorporates the allegations contained in paragraphs 1 through 55 as if fully restated herein.

56. Defendant's commercial use of the U.C. trademarks constitutes a use of the U.C. trademarks which is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendant with U.C., and/or as to the origin, sponsorship or approval of Defendant's goods, services or commercial activities by U.C., all in violation of 15 U.S.C. § 1125(a). Accordingly, Defendant's use of the U.C. trademarks as described herein constitutes unfair competition.

57. Upon information and belief, Defendant's unfair competition has been willful and deliberate, designed specifically to trade upon the consumer goodwill established, maintained and

enjoyed by U.C.

58. U.C.'s consumer goodwill is of substantial value, and U.C. is suffering and will continue to suffer irreparable harm should Defendant's unfair competition continue.

59. Defendant's unfair competition will continue unless enjoined by this Court.

60. U.C. is entitled to a temporary restraining order, preliminary injunction and permanent injunction against Defendant, as well as other remedies available under the Lanham Act, including but not limited to compensatory damages, treble damages, disgorgement of profits, costs and attorney's fees.

## COUNT THREE
## FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)

61. U.C. incorporates the allegations contained in paragraphs 1 through 61 as if fully restated herein.

62. Defendant's commercial use of the U.C. trademarks constitutes a use of the U.C. trademarks which is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendant with U.C., and/or as to the origin, sponsorship or approval of Defendant's goods, services or commercial activities by U.C., all in violation of 15 U.S.C. § 1125(a). Accordingly, Defendant's use of the U.C. trademarks as described herein constitutes false designation of origin.

63. Upon information and belief, Defendant's false designation of origin has been willful and deliberate, designed specifically to trade upon the consumer goodwill established, maintained and enjoyed by U.C.

64. U.C.'s consumer goodwill is of substantial value, and U.C. is suffering and will continue to suffer irreparable harm should Defendant's false designation of origin continue.

65. Defendant's false designation of origin will continue unless enjoined by this Court.

66. U.C. is entitled to a temporary restraining order, preliminary injunction and permanent injunction against Defendant, as well as other remedies available under the Lanham Act, including but not limited to compensatory damages, treble damages, disgorgement of profits, costs and attorney's fees.

67. Defendant's conduct as described in this Complaint has damaged U.C. in an amount that is not now ascertainable but may be proven at trial.

68. Upon information and belief, Defendant's unlawful conduct will continue to U.C.'s detriment unless immediately enjoined.

**WHEREFORE**, U.C. respectfully requests that the Court order:

1. The issuance of a temporary restraining order and preliminary injunction, and thereafter a permanent injunction, enjoining Defendant and its shareholders, directors, officers, agents, servants, employees, successors, representatives and assigns, together will all others in concert and privity with them, from infringing the U.C. trademarks, engaging in unfair competition using the U.C. trademarks, falsely designating the origin of goods and services using the U.C. trademarks, using the U.C. trademarks in commerce in any way, injuring U.C.'s reputation, or engaging in acts or conduct that would cause confusion as to the affiliation, connection or association of Defendant with U.C., or as to the origin, sponsorship or approval of Defendant's goods, services or commercial activities by U.C.;

2. That Defendant immediately cancel or otherwise terminate its registration of the trade name "Bearcat Cafe" with the Ohio Secretary of State, along with any other state or federal registrations incorporating any of the U.C. trademarks, and that Defendant be permanently enjoined from doing business under any name incorporating any of the U.C. trademarks, as well as applying for or obtaining any state or federal registration of any trademark, service mark, business name, trade name, fictitious name or other mark or name incorporating any of the U.C. trademarks;

3. That Defendant account to U.C. for Defendant's profits, the actual damages suffered by U.C. as a result of Defendant's trademark infringement, unfair competition and/or false designation or origin, together with interest and costs, and that such damages be trebled because of the willful acts described above, which acts were committed in knowing disregard of U.C.'s rights;

4. That Defendant pay compensatory and treble damages to U.C.;

5. That Defendant pay U.C.'s attorney's fees, together with the costs of this action; and

6. All other and further relief as may be just and equitable.

Respectfully Submitted,

Mike DeWine
Attorney General of the State of Ohio

By: /s/ Jeffrey D. Houser
JEFFREY D. HOUSER (0076803)
*Trial Attorney*
BRIAN E. HURLEY (0007827)
CRABBE, BROWN & JAMES LLP
500 South Front Street, Suite 1200
Columbus, OH 43215
jhouser@cbjlawyers.com
bhurley@cbjlawyers.com
Telephone: (614) 228-5511
Facsimile: (614) 229-4559
*Attorneys for Plaintiff, University of Cincinnati.*